| Attorney or Party Name, Address, Telephone & FAX Nos., State Bar No. & Email Address | FOR COURT USE ONLY |
|---|---|
| Steven P. Chang (CSB No. 221783)<br>LAW OFFICES OF STEVEN P. CHANG<br>810 South Garfield Avenue<br>Suite 338<br>Alhambra, CA 91801-4486<br>Telephone: (626) 281-1232<br>Fax: (626) 281-2919<br>Email: schang@spclawoffice.com<br><br><br>*Attorney for Plaintiff* | |

## UNITED STATES BANKRUPTCY COURT
## CENTRAL DISTRICT OF CALIFORNIA - LOS ANGELES DIVISION

| In re:<br><br>Barbara Baiz Rodriguez,<br><br><div align="right">Debtor(s).</div> | CASE NO.: 2: 11-bk-39746-RK<br><br>CHAPTER: 11<br><br>ADVERSARY NUMBER: |
|---|---|
| Barbara Baiz Rodriguez,<br><br><div align="right">Plaintiff(s)</div><div align="center">Versus</div>Wells Fargo Bank, N.A.,<br><br><div align="right">Defendant(s)</div> | **SUMMONS AND NOTICE OF STATUS CONFERENCE IN ADVERSARY PROCEEDING [LBR 7004-1]** |

TO THE DEFENDANT: A Complaint has been filed by the Plaintiff against you. If you wish to defend against the Complaint, you must file with the court a written pleading in response to the Complaint. You must also serve a copy of your written response on the party shown in the upper left-hand corner of this page. The deadline to file and serve a written response is _____. If you do not timely file and serve the response, the court may enter a judgment by default against you for the relief demanded in the Complaint.

A status conference in the adversary proceeding commenced by the Complaint has been set for:

| Hearing Date: _____<br>Time: _____<br>Courtroom: _____ | Place:<br>☑ 255 East Temple Street, Los Angeles, CA 90012<br>☐ 3420 Twelfth Street, Riverside, CA 92501<br>☐ 411 West Fourth Street, Santa Ana, CA 92701<br>☐ 1415 State Street, Santa Barbara, CA 93101<br>☐ 21041 Burbank Boulevard, Woodland Hills, CA 91367 |
|---|---|

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

June 2012          Page 1          **F 7004-1.SUMMONS.ADV.PROC**

**You must comply with LBR 7016-1, which requires you to file a joint status report and to appear at a status conference.** All parties must read and comply with the rule, even if you are representing yourself.  You must cooperate with the other parties in the case and file a joint status report with the court and serve it on the appropriate parties at least 14 days before a status conference.  A court-approved joint status report form is available on the court's website (LBR form F 7016-1.1) with an attachment for additional parties if necessary (LBR form F 7016-1.1a).  If the other parties do not cooperate in filing a joint status report, you still must file with the court a unilateral status report and the accompanying required declaration instead of a joint status report 7 days before the status conference.  **The court may fine you or impose other sanctions if you do not file a status report.  The court may also fine you or impose other sanctions if you fail to appear at a status conference.**

<div style="text-align:center">

KATHLEEN J. CAMPBELL
CLERK OF COURT

</div>

Date of Issuance of Summons and Notice of Status Conference in Adversary Proceeding: _____

By: _____
Deputy Clerk

This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

*June 2012*                              Page 2                    **F 7004-1.SUMMONS.ADV.PROC**

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:
801 S. Garfield Ave Ste 338 Alhambra CA 91801

A true and correct copy of the foregoing document entitled: **SUMMONS AND NOTICE OF STATUS CONFERENCE IN ADVERSARY PROCEEDING [LBR 7004-1]** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

1.  **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) _____, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☐ Service information continued on attached page

2.  **SERVED BY UNITED STATES MAIL**:
On (*date*) _____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☐ Service information continued on attached page

3.  **SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

_____    Vivian Quach    _____
Date            Printed Name            Signature

---

This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

FORM B104  (08/07)                                                                                    2007 USBC, Central District of California

| ADVERSARY PROCEEDING COVER SHEET<br>(Instructions on Page 2) | ADVERSARY PROCEEDING NUMBER<br>(Court Use Only) |
|---|---|

| PLAINTIFFS<br>Barbara Baiz Rodriguez | DEFENDANTS<br>Wells Fargo Bank, N.A. |
|---|---|

| ATTORNEYS (Firm Name, Address, and Telephone No.)<br>LAW OFFICES OF STEVEN P. CHANG<br>810 South Garfield Avenue Ste 338 Alhambra, CA 91801<br>Telephone: (626) 281-1232 | ATTORNEYS (If Known)<br>Steven P. Chang |
|---|---|

| PARTY (Check One Box Only)<br>☑ Debtor      ☐ U.S. Trustee/Bankruptcy Admin<br>☐ Creditor    ☐ Other<br>☐ Trustee | PARTY (Check One Box Only)<br>☐ Debtor      ☐ U.S. Trustee/Bankruptcy Admin<br>☑ Creditor    ☐ Other<br>☐ Trustee |
|---|---|

**CAUSE OF ACTION** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)
Declaratory Relief

---

## NATURE OF SUIT
(Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

**FRBP 7001(1) – Recovery of Money/Property**

☐ 11-Recovery of money/property - §542 turnover of property

☐ 12-Recovery of money/property - §547 preference

☐ 13-Recovery of money/property - §548 fraudulent transfer

☐ 14-Recovery of money/property - other

**FRBP 7001(2) – Validity, Priority or Extent of Lien**

☐ 21-Validity, priority or extent of lien or other interest in property

**FRBP 7001(3) – Approval of Sale of Property**

☐ 31-Approval of sale of property of estate and of a co-owner - §363(h)

**FRBP 7001(4) – Objection/Revocation of Discharge**

☐ 41-Objection / revocation of discharge - §727(c),(d),(e)

**FRBP 7001(5) – Revocation of Confirmation**

☐ 51-Revocation of confirmation

**FRBP 7001(6) – Dischargeability**

☐ 66-Dischargeability - §523(a)(1),(14),(14A) priority tax claims

☐ 62-Dischargeability - §523(a)(2), false pretenses, false representation, actual fraud

☐ 67-Dischargeability - §523(a)(4), fraud as fiduciary, embezzlement, larceny

**(continued next column)**

**FRBP 7001(6) – Dischargeability (continued)**

☐ 61-Dischargeability - §523(a)(5), domestic support

☐ 68-Dischargeability - §523(a)(6), willful and malicious injury

☐ 63-Dischargeability - §523(a)(8), student loan

☐ 64-Dischargeability - §523(a)(15), divorce or separation obligation (other than domestic support)

☐ 65-Dischargeability - other

**FRBP 7001(7) – Injunctive Relief**

☐ 71-Injunctive relief – imposition of stay

☐ 72-Injunctive relief – other

**FRBP 7001(8) Subordination of Claim or Interest**

☐ 81-Subordination of claim or interest

**FRBP 7001(9) Declaratory Judgment**

☐ 1  91-Declaratory judgment

**FRBP 7001(10) Determination of Removed Action**

☐ 01-Determination of removed claim or cause

**Other**

☐ SS-SIPA Case – 15 U.S.C. §§78aaa et.seq.

☐ 02-Other (e.g. other actions that would have been brought in state court if unrelated to bankruptcy case)

| ☐ Check if this case involves a substantive issue of state law | ☐ Check if this is asserted to be a class action under FRCP 23 |
|---|---|
| ☐ Check if a jury trial is demanded in complaint | Demand $ |

Other Relief Sought

FORM B104 (08/07), page 2                                                                 2007 USBC, Central District of California

| BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES | | |
|---|---|---|
| NAME OF DEBTOR<br>Barbara Baiz Rodriguez | | BANKRUPTCY CASE NO.<br>2:11-bk-39746RK |
| DISTRICT IN WHICH CASE IS PENDING<br>Central | DIVISIONAL OFFICE<br>Los Angeles | NAME OF JUDGE<br>Robert Kwan |

| RELATED ADVERSARY PROCEEDING (IF ANY) | | |
|---|---|---|
| PLAINTIFF<br>Barbara Baiz Rodriguez | DEFENDANT<br>Wells Fargo Bank, N.A. | ADVERSARY PROCEEDING NO. |
| DISTRICT IN WHICH ADVERSARY IS PENDING | DIVISIONAL OFFICE | NAME OF JUDGE |

| SIGNATURE OF ATTORNEY (OR PLAINTIFF) |
|---|
| *[signature]* |

| DATE<br>2/19/13 | PRINT NAME OF ATTORNEY (OR PLAINTIFF)<br>Steven Chang |
|---|---|

## INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also must complete and file Form 104, the Adversary Proceeding Cover Sheet, unless the party files the adversary proceeding electronically through the court's Case Management/Electronic Case Filing system (CM/ECF). (CM/ECF captures the information on Form 104 as part of the filing process.) When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney). A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs** and **Defendents.** Give the names of the plaintiffs and defendants exactly as they appear on the complaint.

**Attorneys.** Give the names and addresses of the attorneys, if known.

**Party.** Check the most appropriate box in the first column for the plaintiffs and the second column for the defendants.

**Demand.** Enter the dollar amount being demanded in the complaint.

**Signature.** This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is pro se, that is, not presented by an attorney, the plaintiff must sign.

1 | Steven P. Chang (CA State Bar No. 221783)
LAW OFFICES OF STEVEN P. CHANG
2 | 810 South Garfield Avenue
Suite 338
3 | Alhambra, CA 91801-4486
Telephone: (626) 281-1232
4 | Fax: (626) 281-2919
Email: schang@spclawoffice.com

5

6 | Counsel for Barbara Baiz Rodriguez
Debtor and Debtor-In-Possession

7

8

### UNITED STATES BANKRUPTCY COURT

9

### CENTRAL DISTRICT OF CALIFORNIA, LOS ANGELES DIVISION

10

11

| In re | CASE NO. : 2: 11-bk-39746-RK |
| | |
| Barbara Baiz Rodriguez, | Chapter 11 |
| | |
| | ADVERSARY NO.  [To be Assigned] |
| Debtor. | |
| | **COMPLAINT FOR:** |
| | |
| | **(1) DECLARATORY RELIEF** |
| Barbara Baiz Rodriguez, | |
| Plaintiff, | |
| | DATE: |
| vs. | TIME:   [To Be Set by Summons] |
| | PLACE: |
| Wells Fargo Bank, N.A., | |
| Defendant. | |

### JURISDICTION

1.     The Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C.

sections 157 and1324 in that this action arises in and relates to the bankruptcy case pending in the

United States Bankruptcy Court for the Central District of California entitled *In Re Barbara Baiz*

*Rodriguez* Case No. 2: 11-bk-39746-RK.

2.      Plaintiff, Barbara Baiz Rodriguez, as the debtor and debtor in possession has standing to bring this action pursuant to 11 U.S.C. § 323.

3.      This adversary proceeding is a core proceeding under 28 U.S.C. §§ 157(b)(2) AND 1334 and this Court has the constitutional authority to enter a final judgment on these claims.  To the extent any claim for relief contained herein is determined not to be a core proceeding Plaintiff consents to the entry of final judgment and orders by the Bankruptcy Court.

4.      Venue properly lies in the Central District of California in that this adversary proceeding arises in or is related to a case under Title 11 of the United States Code as provided in 28 U.S.C. sections 1408 and 1409.

**PARTIES**

5.      Plaintiff, Barbara Baiz Rodriguez, (hereafter "Plaintiff") is the debtor and debtor in possession in the above captioned case.

6.      Plaintiff alleges that at all relevant times Defendant Wells Fargo Bank, N.A., aka Wachovia Mortgage ("Defendant" or "WSB") is a corporation doing business in California.

**<u>GENERAL ALLEGATIONS</u>**

7.      In May 2005, Plaintiff purchased her home at 14773 Tamarix Dr., Hacienda Heights, CA 91745.  The purchase price was $875,000.00.  Plaintiff put approximately $100,000.00 down payment and financed $700,000.00 with Wachovia Mortgage on a pick a payment loan.

8.      In or about December 2010, California Attorney General's Office and Wachovia Mortgage, and its subsidiaries and affiliates entered into a settlement agreement entitled "Assurance" wherein Wachovia is required to modify eligible borrower's pick a payment mortgage to a fixed repayment loan.  See attached Exhibit A herewith true and correct copy of the Assurance Agreement.

1

9.     Plaintiff is an eligible borrower covered under the assurance agreement.

10.     Beginning in or about March 2011, due to the various lawsuits Plaintiff began defaulting on her loans.  She ultimately filed for bankruptcy protection on July 12, 2011.

11.     Plaintiff has made progress in her chapter 11 plan and obtained via stipulations and motions to value her properties and expects sufficient votes to her proposed chapter 11 plan, except secured creditor, WSB.

12.     WSB in response to the original disclosure and plan filed and elected §1111(b) election for treatment of its note.  Accordingly, WSB elected as an undersecured creditor to retain its lien for the full amount owed, avoiding bifurcation under §506(a), and be paid in full in the plan.

13.     In response, Debtor has filed an amended disclosure statement and plan treatment for WSB wherein she elected to accept in accordance with the Assurance Agreement settlement proposal.  WSB takes the position that Plaintiff is not eligible under the Assurance Agreement.

14.     Debtor takes the position that her election in accordance with the Assurance Agreement means WSB is unimpaired and cannot vote in Debtor's plan.

15.     Dispute arose between Plaintiff and Defendant concerning the classification and rights under the assurance agreement.

**FIRST CLAIM FOR RELIEF**

For Declaratory Relief

16.     Plaintiff realleges the allegations at paragraphs 1 through 15 as though fully set forth herein.

17.     An actual controversy exists between Plaintiff on the one hand and Defendant on the other hand as to the qualification of Assurance Agreement.

18.    Plaintiff alleges that due to the mandatory provisions under the Assurance Agreement, WSB must accept her loan modification under the Assurance agreement.

19.    Plaintiff further alleges that she has proposed a plan treatment to WSB in accordance with the Assurance Agreement.

20.    Plaintiff further alleges that her election under the Assurance Agreement does not otherwise impair WSB and therefore WSB is not entitled to vote on this Chapter 11 plan.

21.    Finally Plaintiff alleges that her election under the Assurance Agreement also nevertheless satisfies WSB's §1111(b) election.

22.    Defendant denies the allegations.

23.    A judicial declaration is necessary at this time as to the assertions and positions of Plaintiff and Defendant.

24.    A judicial declaration is necessary at this time that the Settlement Agreement, the Addendum, and the Acknowledgement are all void.  A judicial declaration is also necessary at this time that the transfers of Plaintiff's property into the Partnership as a result of the Settlement Agreement, the Addendum, and the Acknowledgement are also void.

## **PRAYER**

**WHEREFORE**, Plaintiff prays for judgment as follows:

1. As to First Claim for Relief, for a declaration that:

    a.   WSB must accept Plaintiff's election under the Assurance Agreement;

    b.   Plaintiff's proposed election under the Assurance Agreement is consistent with the Assurance Agreement

    c.   WSB is not impaired.

    d.   Plaintiff's proposed treatment under the Assurance Agreement also satisfies the §1111(b) election by Defendant.

2. For costs of suit incurred herein, including without limitation, attorneys' fees; and

3. For such other and further relief the Court deems just and proper.

DATE:    February 19, 2013

LAW OFFICES OF STEVEN P. CHANG

By: _____
Steven P. Chang
Attorney for Plaintiff Barbara Baiz Rodriguez
Debtor and Debtor-in Possession

4

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26 **EXHIBIT "A"**

27

28

## ASSURANCE

This Assurance, by and between the People of the State of California, by and through Edmund G. Brown Jr., Attorney General of the State of California and Wells Fargo Bank, N.A. ("Wells Fargo"), is entered into as of this ___ day of December, 2010 ("Effective Date"). The Parties hereby agree to the following:

I.   **PARTIES**

A.   The People of the State of California, by and through Edmund G. Brown Jr., Attorney General of the State of California.

B.   Golden West Financial Corporation, a Delaware Corporation, and its subsidiaries and affiliates, including but not limited to World Savings Bank, FSB, World Savings and Loan Association, World Mortgage Company, World Savings Bank, FSB, World Savings Bank SSB, World Loan Company and Home Loan Experts (hereinafter referred to as "World Savings Bank").

C.   Wachovia Corporation, and its subsidiaries and affiliates, including but not limited to Golden West Financial Corporation, a North Carolina Corporation, AmNet Mortgage, LLC, American Mortgage Network, LLC, Wachovia Mortgage, FSB, Wachovia Bank, FSB and Wachovia Bank, N.A. (hereinafter referred to as "Wachovia"). Wachovia acquired Golden West Financial Corporation, a Delaware Corporation, and its subsidiaries on October 1, 2006. Wells Fargo & Company, a Delaware Corporation, acquired Wachovia Corporation on December 31, 2008, including Wachovia's subsidiaries, including but not limited to Wachovia Bank, N.A. and Wachovia Bank of Delaware, N.A. As a result of this acquisition, Wells Fargo is the party responsible for providing the relief set forth in this Assurance.

1

II.    STIPULATION

A.    World Savings Bank and Wachovia originated payment option mortgages ("Pick-a-Payment mortgage loans"). The Pick-a-Payment mortgage loan permitted borrowers to elect to make a fully amortizing 30- or 15-year interest and principal payment; an "interest-only" payment; or a lesser, minimum payment. When the minimum payment was insufficient to pay the interest owed, unpaid interest was added to the loan balance and the outstanding loan balance increased.

B.    The Office of the California Attorney General opened an investigation into whether violations of Sections 17200 or 17500 of the California Business and Professions Code were committed by Golden West or Wachovia in the marketing and advertising of Pick-a-Payment mortgage loans. Wells Fargo never originated or marketed and currently does not originate or market Pick-a-Payment mortgage loans, but acquired Wachovia's portfolio of Pick-a-Payment mortgage loans.

C.    Once it acquired Wachovia's portfolio of Pick-a-Payment mortgage loans, Wells Fargo began efforts to modify certain borrowers' loans.

D.    In light of the Pick-a-Payment mortgage loan features, the dramatic declines in home prices, and rising unemployment, some Pick-a-Payment mortgage loan borrowers are unable to meet their mortgage obligations.

E.    The Office of the Attorney General and Wells Fargo share concerns regarding the ability of troubled Pick-a-Payment mortgage loan borrowers to repay their loans. This Assurance sets forth a framework through which Wells Fargo will offer distressed Pick-a-Payment mortgage loan borrowers affordable loan modifications that include significant principal forgiveness. That framework includes a reporting requirement, described below, whereby Wells Fargo will provide the Office of the Attorney General with detailed quarterly reports that provide state-specific and

2

aggregate national data on Wells Fargo's efforts to assist Pick-a-Payment mortgage loan borrowers.

III.    **DEFINITIONS**

    A.    *Usage.* The following rules apply to the construction of this Assurance:

        1.    the singular includes the plural and the plural includes the singular;

        2.    "include" and "including" are not limiting;

        3.    the headings of the Sections and subsections are for convenience and shall not constitute a part of this Assurance, and shall not affect the meaning, construction, or effect of the applicable provisions of this Assurance;

        4.    words such as "hereunder," "hereto," "hereof," and "herein" and other words of like import shall, unless the context clearly indicates to the contrary, refer to the whole of this Assurance and not to any particular Section, subsection, or clause hereof.

    B.    *Defined Terms.* The following bolded terms shall have the following meanings in this Assurance unless otherwise required by the context or definition:

*"Accrued Interest"* means scheduled periodic interest owed in accordance with the applicable mortgage note.

*"Borrower"* means the obligor(s) on a Pick-a-Payment mortgage loan note and the title holder(s) who signed the security investment subjecting certain real estate property as collateral for such note.

**"Commencement Date"** means the later of December 18, 2010, and the Effective Date.

*"Corporate and Default-Related Advances"* means any default- or foreclosure-related fee or cost assessed to a Borrower's account for expenditures such as attorney fees, statutory expenses,

3

foreclosure fees and costs, fees for property valuations, property inspections, property preservation, and protective advances.

"*Deferred Interest*" means the interest charges added to the Borrower's principal balance as a result of the Borrower making the minimum payment where the minimum payment did not include all of the interest that had accrued on the Eligible Mortgage.

"*Delinquent Borrower*" means a Borrower whose mortgage payment is 60 days or more past due.

"**DTI**" or "**Debt-to-Income Ratio**" means the ratio of the Borrower's first-lien mortgage Monthly Payment (including monthly amounts for principal, interest, escrow, taxes, hazard insurance and homeowners' association or condominium fees if such homeowners' association or condominium fees are escrowed) to the Borrower's gross monthly income, all determined in accordance with HAMP, as defined in Treasury's Supplemental Directive 9-01: Introduction of the Home Affordable Modification Program, April 6, 2009.

"*Eligible Borrower*" means a Delinquent Borrower with an Eligible Mortgage or a Borrower facing Imminent Default with an Eligible Mortgage.

"*Eligible Mortgage*" means a Pick-a-Payment mortgage loan that is secured by a 1-4 unit residential property that is the Borrower's principal residence.

"*Escrow-related Advances*" refers to advances for items such as property taxes, hazard insurance, homeowner association or condominium fees advanced on behalf of the Borrower by Wells Fargo.

"*Fully Amortizing*" means a Pick-a-Payment mortgage loan in which the Borrower's Monthly Payment fully covers the interest accrued and due that month, as well as paying a portion

of the principal balance such that the balance of the loan should be paid in full at the expiration of the term of the loan if all Monthly Payments are made when due.

"*Good standing*" means a Borrower who is not currently and, since the effective date of the Borrower's MAP2R modification agreement, has never been delinquent by the equivalent of three (3) full Monthly Payments at the end of the month in which the last of the three (3) delinquent payments was due. Once lost, Good Standing cannot be restored even if the borrower subsequently cures the default.

"*HAMP*" refers to the Home Affordable Modification Program administered by the United States Department of the Treasury.

"*HAMP Principal Reduction Alternative*" refers to the principal reduction alternative described in Treasury's Supplemental Directive 10-05: Modification of Loans with Principal Reduction Alternative, dated June 3, 2010.

"*Imminent Default*" describes a Borrower who Wells Fargo has determined, in accordance with applicable HAMP guidance, as necessary, that default by the Borrower in making scheduled payments on his or her loan is reasonably foreseeable. In assessing whether a Borrower is facing Imminent Default, Wells Fargo will not consider funds held in a 401K, 457, 401(a), or 503 retirement account, an IRA, SEP IRA, Simple IRA, or Roth IRA. Additionally, the fact that a Borrower is projected to Recast to a fully amortizing payment under the terms of the Pick-a-Payment mortgage loan within the upcoming four contractual Monthly Payments using the current applicable interest rate as determined under the terms of the note, and the resulting increase, if any, to the respective Borrower's DTI, shall be considered as a factor in the determination of Imminent Default.

"*LTV*" means the current ratio of the unpaid principal balance of the Eligible Mortgage less any amounts of principal forbearance, to the Market Value of the residential property that secures such Eligible Mortgage as of the time reviewed for eligibility for modification.

"*MAP 1*" shall mean Wells Fargo's proprietary modification program in effect from January 1, 2009 to June 4, 2010.

"*MAP2R*" means Wells Fargo's Mortgage Assistance Program 2 which is based on the terms described in this Assurance.

"*Market Rate*" is the Freddie Mac Weekly Primary Mortgage Market Survey (PMMS) Rate for 30-year fixed rate conforming loans, rounded to the nearest 0.125 percent, as of the date that the modification or option is prepared, plus 100 basis points.

"*Market Value*" means the value of the residential property that secures a Pick-a-Payment mortgage loan as determined by Wells Fargo in reliance on an appraisal report prepared not more than 180 days before the date of determination, broker price opinion prepared not more than 120 days before the date of determination or automated valuation model prepared not more than 90 days before the date of determination. Notwithstanding the foregoing, for the purposes of Section "X" of this Assurance, Wells Fargo may rely on the most recent value available in its system of record for determining the value of the residential property.

"*Monthly Payment*" means the amount that is due from a Borrower on a monthly basis according to the note, and shall include any principal amounts, monthly accrued interest, monthly amounts to apply to escrow for taxes, hazard insurance, and homeowners' association or condominium fees.

"*Negative Amortization*" has the same meaning as Deferred Interest.

6

*"NPV Test"* means the calculation and comparison of the net present value ("NPV") of a modification versus the NPV of conducting no modification as to the same mortgage loan. The calculation of NPV is arrived at using a proprietary formula developed by Wells Fargo. If the NPV of the modification would be greater than the NPV if there was no modification, the result is deemed "positive." If the NPV of the modification would be less than the NPV if there was no modification, the result is deemed "negative."

*"Office of the Attorney General"* means the Office of the Attorney General of California.

*"Payment Reset"* means an annual increase in the rate of interest such that the aggregate scheduled payments of principal (if applicable) and interest in any year increases by up to 7.5%.

*"Pick-a-Payment mortgage loan"* means a mortgage loan originated or acquired by World Savings Bank or Wachovia. The Pick-a-Payment mortgage loan permitted the Borrower to select and make a minimum payment amount for a limited time and subject to certain conditions. In particular, for each payment, the borrower could choose from four options. Borrowers could (i) make a fully amortized interest and principal payment such that the loan would be satisfied in the traditional 30-year term; (ii) make a 15-year fully amortized payment; (iii) make an "interest-only" payment; or (iv) make a lesser, minimum payment. Borrowers could also choose any payment amount between these numbers. When a payment was insufficient to pay the interest owed, unpaid interest was added to the loan balance and the outstanding loan balance increased. Wells Fargo (which did not originate any Pick-a-Payment mortgage loans) acquired Wachovia and its Pick-a-Payment mortgage loan portfolio on December 31, 2008.

*"Reason for Rejection"* means the specific reason a Borrower was not offered a loan modification. Those specific reasons shall include, at a minimum, the following: negative NPV, Borrower already below 31% DTI, Borrower failed to make trial payments, Borrower rejected

modification proposal. Borrower failed to provide necessary documents or failed to respond to communications, or other.

"*Recast*" means a recalculation establishing a new fully amortizing periodic payment triggered by the unpaid principal balances cap, or date certain, such that the payment increase as a result of such Recast exceeds 7.5%.

"*Termination date*" means June 30, 2013, with the exception of certain reporting obligations outlined in Section "X. E." of this Assurance.

## IV.   WELLS FARGO'S RESPONSIBILITY UNDER THIS ASSURANCE

A.   ***Responsibility of Wells Fargo.***  Wells Fargo is responsible to the Office of the Attorney General for performance of all of the undertakings in this Assurance. Sale or other disposition of the ownership or servicing rights of all or any part of its Pick-a-Payment mortgage loan portfolio or of the entity or entities responsible for servicing or modifying these mortgages shall not relieve Wells Fargo of its duties under this Assurance or constitute a defense to its non-performance.

B.   ***Remedies for Failure of Wells Fargo to Cause Performance.***  This Assurance shall be binding upon Wells Fargo. In the event that the Office of the Attorney General believes that there has been a material breach of the terms and conditions of this Assurance, it, may seek enforcement of this Assurance, or, in the alternative, terminate this Assurance, provided that the Office of the Attorney General notifies Wells Fargo in writing in advance of termination or the filing any enforcement action and gives Wells Fargo at least sixty (60) days to cure the claimed breach. In the event that the Office of the Attorney General terminates this Assurance as a result of a breach by Wells Fargo that has not been cured in accordance with this Paragraph, it shall no longer be bound by the Releases in Section XI. However, (i) nothing in this Assurance shall be

construed as authorizing any person or entity other than the Office of the Attorney General to enforce or seek remedies under this Assurance or as a result of this Assurance or a breach thereof; (ii) the remedies in any enforcement action shall not include any criminal sanctions; and (iii) this Assurance and all negotiations, statements, and proceedings in connection therewith shall not be construed as or deemed to be evidence of an admission or concession on the part of Wells Fargo of any violation of law, liability, or wrongdoing by it, and shall not be offered or received in evidence in any action or proceeding, or used in any way as an admission, concession or evidence of any violation of law, liability or wrongdoing of any nature on the part of Wells Fargo.

## V.  LOAN MODIFICATIONS FOR ELIGIBLE BORROWERS IN PICK-A-PAYMENT MORTGAGE LOANS

Starting with the Commencement Date, Wells Fargo, on an ongoing basis, shall offer Eligible Borrowers affordable loan modifications in accordance with the following provisions:

A.    *Loan Modifications to Be Considered.*  Consistent with federal requirements, each Eligible Borrower shall first be considered for a HAMP modification.  Eligible Borrowers who do not qualify for or elect not to accept a HAMP modification shall be considered for a MAP2R modification on the terms as outlined in Section "V. B." of this Assurance.

B.    *MAP2R Modification.*  Eligible borrowers who do not qualify for or elect a HAMP modification shall be considered for a MAP2R modification on the terms in this Section "V.B." The following process shall commence upon receipt of the documents described in Section V.B.4. and subsequent verification that the Eligible Borrower's DTI is above 31%.  The loan will be converted to a fully amortizing loan and the negative amortization feature will be eliminated.

1.  *Waterfall.*  Wells Fargo will apply the following waterfall, in the order listed below, until an Eligible Borrower's Monthly Payment reaches a DTI of 31%.  The DTI may be slightly higher than 31% if the next step or action within the waterfall will result in a

9

DTI below 31%. Once a DTI as close as possible to 31% is reached, Wells Fargo will not apply any additional steps in the waterfall, nor actions within a step. If any step in the waterfall is already achieved, Wells Fargo will proceed to the subsequent step. If all steps of the waterfall have been exhausted and a DTI of 31% can not be achieved, Wells Fargo is not required to offer a MAP2R modification. Following application of the waterfall all loans must pass the NPV test (as outlined in Section V.B.3) before a MAP2R modification must be offered.

a.   Waive all Accrued Interest, outstanding late charges, and outstanding fees.

b.   Escrow-related Advances, and Corporate and Default-Related Advances will first be capitalized, then immediately and permanently forgiven. If this forgiveness combined with the waiver of all Accrued Interest, outstanding late charges, and outstanding fees in Section "V.B.1.a." does not equal a number that represents ten (10) percent of the unpaid principal balance (calculated by multiplying the pre-modification unpaid principal balance by 10%), then any Deferred Interest, if it exists will be waived until the total of the waived Accrued Interest, Escrow-related Advances, outstanding late charges, outstanding Corporate and Default-Related Advances, and Deferred Interest result in number that represents ten (10) percent of the unpaid principal balance. In the absence of Deferred Interest, only Accrued Interest, outstanding late charges, outstanding fees, Escrow-related Advances, and Corporate and Default-Related Advances will be forgiven. While Accrued Interest, outstanding late charges, outstanding fees, Escrow-related Advances, Corporate and Default-Related Advances will be waived for Eligible Borrowers, regardless of LTV,

forgiveness of Deferred Interest will be applied only to the extent that it does not reduce the Borrower's current LTV below 100%.

c.    Forgive principal until an LTV of 150% is achieved;

d.    Extend the loan term and re-amortize the loan in one month increments to a maximum term of 480 months;

e.    Forbear principal with the opportunity to be forgiven, as outlined in Section "V.B.2", until a LTV of 125% is achieved. The principal forbearance amount is non-interest bearing and non-amortizing. The amount of principal forbearance that is not forgiven will result in a balloon payment fully due and payable upon the earliest of the transfer of ownership of the property, payoff of the interest bearing unpaid principal balance, or maturity of the loan. Should Wells Fargo choose to participate in HAMP Principal Reduction Alternative ("PRA"), Supplemental Directive 10-05, the LTV level of this step shall be adjusted from 125% to 115% for modifications done on a prospective basis from the date Wells Fargo elects to participate in the PRA directive.

f.    Reduce the interest rate in .125% increments. In all cases, the interest rate shall not be reduced below a floor of 2%. If the interest rate after the modification is below the Market Rate, this reduced rate will be in effect for the first three years following the date of the loan modification. Thereafter it will be increased by a maximum of one percent per year at each 12-month anniversary date of the original modification until it reaches the Market Rate, at which time that rate shall be fixed for the remaining loan term. If the interest rate after the modification is above or equal to the Market Rate, then that resulting rate shall become the permanent rate for

11

the remaining loan term. In no event will a step rate increase result in a greater than 15% increase in the portion of the monthly payment for principal and interest. If it does, then the rate shall only be increased by the amount that results in an interest rate such that the increase in the monthly principal and interest portion of the payment is no greater than 15%; thereafter, the rate will continue to increase according to the terms above each year until the Market Rate is ultimately reached.

g.      Forbear principal without the opportunity for conditional forgiveness until a LTV of 100% is reached.

*2.  Conditional Forgiveness.*  Principal forborne under Section "V.B.1.e." will be forgiven if the Eligible Borrower who received a MAP2R modification is in Good Standing on the first, second, and third anniversaries of the loan modification. On each of the above anniversary dates that such Borrower is in Good Standing, equal portions of one-third of the principal forbearance amount will be permanently forgiven.

*3.  NPV test.*  All potential MAP2R modifications will be subjected to an NPV test prior to being offered to a Borrower. Wells Fargo shall not be required to offer the Borrower a MAP2R modification that yields an NPV negative result. However, Wells Fargo, in its sole discretion, may offer the NPV negative modification or, if possible, may offer an Eligible Borrower an alternate modification.

*4.  Documentation Requirements.*  In determining the documents required of Eligible Borrowers to apply for MAP2R modification, Wells Fargo, consistent with its need to obtain relevant financial information, will seek to minimize the burden on Eligible Borrowers and maximize participation in MAP2R. Wells Fargo will not

12

request signed affidavits from Borrowers to document their hardship, and will not require more than one year's income tax return, but will require documentary evidence of the Borrower's current income.

*5. Eligible Borrowers Who Do Not Qualify for MAP2R Modifications.* There is no obligation for Well Fargo to offer MAP2R loan modifications to Eligible Borrowers who cannot be qualified under the HAMP or MAP2R guidelines. Such Eligible Borrowers may receive consideration for payments in connection with short sales, deeds-in-lieu of foreclosure, or relocation assistance as described in Section "VIII."

*6. Following Termination of this Assurance.* After the Termination Date, Wells Fargo will continue to evaluate Eligible Borrowers for potential loan workout solutions that are commercially reasonable and are designed to help avoid foreclosure. These solutions may or may not be MAP2R modifications and their terms will be in the sole discretion of Wells Fargo.

## VI.    SERVICING COMMITMENTS FOR BORROWERS SEEKING MAP2R MODIFICATIONS OR FIXED RATE CONVERSIONS

*Outreach to Borrowers.* Within 30 days after the Commencement Date, Wells Fargo will send Delinquent Borrowers with Eligible Mortgages and HUD-certified housing counseling agencies in California two letters describing MAP2R's eligibility requirements, terms, and application process and its relationship with HAMP. These letters will be designed to maximize response rates and will include in-language communications to Spanish-speaking borrowers.

*Borrowers Within 120 Days of Recast.* Any Borrower whose loan is within 120 days of Recast during the term of this Assurance will be offered by Wells Fargo the option, if qualified, of converting their Pick-a-Payment mortgage loan to a fixed rate loan at the Market Rate to be

amortized over a thirty (30) year term ("Fixed Rate Conversion"). All such Borrowers eligible for this Fixed Rate Conversion must provide sufficient documentation to allow Wells Fargo to determine the Borrower's ability to repay the converted loan. There shall be no fee for exercising this Fixed Rate Conversion.

A.   *Servicing Commitments.*   In order to ensure that Borrowers receive timely and appropriate consideration for modifications or Fixed Rate Conversion options, Wells Fargo will:

1.   Maintain a dedicated, adequately staffed help line to serve Eligible Borrowers, including Spanish-speaking borrowers;

2.   Make and communicate to Eligible Borrowers in writing, decisions on their MAP2R modifications within 30 calendar days of receiving all required documentation from the Eligible Borrower. This notice may be included within any notice required in connection with the consideration of the Eligible Borrower for a HAMP modification;

3.   Wells Fargo will assign a primary point of contact at Wells Fargo to each Eligible Borrower seeking a modification;

4.   Establish a formal second-look and escalation protocol for all Eligible Mortgages covered by the Assurance; and

5.   *Second Liens.*  Where an Eligible Borrower who has a first lien loan that is modified under this Assurance, also has an equity line of credit second mortgage loan that was originated by Wachovia or World Savings Bank, and is currently serviced by Wells Fargo's Pick-a-Payment mortgage loan servicing group in San Antonio, Texas, Wells Fargo will review this second lien for an appropriate modification based on the Eligible Borrower's circumstances.

14

B.      *Restrictions on the Foreclosure Process*.  Wells Fargo will apply HAMP rules under Supplemental Directive 10-02, dated March 24, 2010, and any applicable state laws regarding initiating or advancing foreclosures to Eligible Borrowers being considered for MAP2R modifications.  In addition, Wells Fargo will ensure that each Eligible Borrower:

1.      Has notes in his or her electronic records accessible to all loss mitigation, modification, and foreclosure departments that indicate whether he or she is being considered for a loan modification;

2.      Who is being considered for a loan modification receives in any foreclosure related communication notice that he or she is still being considered for a modification, with the exception of notices generated by outside counsel or foreclosure trustee companies retained by Wells Fargo to assist with or conduct the foreclosure process.  Wells Fargo will develop and implement policies and procedures to provide notification to their foreclosure attorney/trustee regarding a Borrower's modification status;

3.      Is notified in writing within ten (10) days of submitting a modification request of any documents believed to be missing and necessary for evaluation for a MAP2R loan modification; and

4.      Who is denied a MAP2R modification receives a timely denial letter that clearly explains the reasons that the modification was denied and describes the steps necessary to request that Wells Fargo re-review the decision.

VII.   MISCELLANEOUS PROVISIONS RELATED TO LOAN MODIFICATIONS AND REFINANCING

A.   *Modification Fees and Prepayment Penalties.* Wells Fargo will waive all prepayment penalties and assess no fees in connection with a modification of an Eligible Mortgage. Wells Fargo shall not require a customer to make any payment of arrearages as part of the loan modification process.

B.   *Releases.* Wells Fargo will not solicit or require releases of claims in connection with loan modifications offered under this Assurance.

C.   *Bankruptcy.* MAP2R will be offered to Eligible Borrowers who are in bankruptcy to the extent and in the manner permitted by law.

D.   *Borrowers With Prior Modifications.* Eligible Borrowers who have earlier received a MAP 1 modification or other modification not pursuant to this Assurance will not be eligible to be considered for new loan modification offer under this Assurance.

E.   *Compliance Monitor.* Wells Fargo will designate an employee as the Compliance Officer responsible for this Assurance. The Compliance Officer will be responsible for providing agreed upon reporting and ensuring that Wells Fargo reviews and responds to complaints from the Office of the Attorney General or from individual borrowers concerning aspects of this Assurance. Within 30 days of receipt of a written consumer complaint sent through the Office of the Attorney General, the Compliance Officer will reply in writing to the Office of the Attorney General with a response that fairly addresses the substance of the consumer's complaint, including a discussion of any corrective measures that may have been taken to address issues raised by the complaint.

F.   *Borrower Consent.* A Borrower's complaint to the Office of the Attorney General suffices as (or constitutes) the Borrower's authorization for Wells Fargo to discuss his or her

complaint with the Office of the Attorney General.

## VIII.    NON-RETENTION ALTERNATIVES TO FORECLOSURE

A.    Wells Fargo will offer the Home Affordable Foreclosure Alternatives ("HAFA") or its internal short sale or deed-in-lieu of foreclosure alternatives to Eligible Borrowers who are unable to qualify for an affordable modification or who decide to leave their homes, and otherwise are qualified for a short-sale or deed-in-lieu of foreclosure under HAFA guidelines.

B.    Eligible Borrowers who qualify for HAFA will receive an incentive payment of at least $3,000 for a short-sale or deed-in-lieu of foreclosure; and

C.    Eligible Borrowers who do not qualify for HAFA, but otherwise qualify for a short-sale or deed-in-lieu of foreclosure will receive payments of at least $1,500 to assist with relocation expenses.

## IX.    FORECLOSURE RELIEF PROGRAM

Wells Fargo will provide $33,868,615 to the Office of the Attorney General.  $32,000,000 of this sum shall be distributed to borrowers who experienced a foreclosure sale on a property secured by an Eligible Mortgage between January 1, 2005 and the Effective Date.  The Office of the Attorney General may hire a third party settlement administrator to distribute payments to eligible foreclosed borrowers.  The remaining $1,868,615 shall be paid to the Office of the Attorney General, for the exclusive use of the Office of the Attorney General for the investigation and prosecution of consumer protection matters, for consumer education and outreach, and to pay any costs incurred to distribute payments to eligible foreclosed borrowers.

## X.    REPORTING REQUIREMENTS

Wells Fargo will provide the Office of the Attorney General with quarterly reports through the Termination Date, setting forth the information outlined in this Section "X", except for the

requirements set forth as described in Section "X.E." All such reports will be provided within forty-five (45) days after the end of each quarter and provide both state, as determined by the property address, and aggregate national data, as necessary per the specific reporting requirement for the activity during that quarter. The quarterly reports will provide the following information broken down by the type of relief for Eligible Mortgages: (1) HAMP modifications, (2) MAP2R modifications, and (3) combined information for both HAMP and MAP2R modifications; (4) Foreclosure Alternatives; and (5) Fixed Rate Conversions.

Additionally, in the event that the Office of the Attorney General, in connection with implementation of this Assurance, wishes to locate and contact Borrowers of Eligible Mortgages who between January 2, 2005, and the Commencement Date have gone through a foreclosure sale, Wells Fargo will work with the Office of the Attorney General to contact or provide contact information for those Borrowers. Specifically, Wells Fargo will 1) provide the name and most current mailing address of all Borrowers of foreclosed Eligible Mortgages within 60 days of a such a request, and 2) at its own expense, and upon request of the Office of the Attorney General, submit the names and all necessary identifying information of Eligible Borrowers that were not located using the information provided in section 1) to the United States Postal Services' National Change of Address (NCOA) service, and/or to a settlement administrator or other qualified vendor, and will provide the Office of the Attorney General with a best new address for said Eligible Borrowers within 90 days of such a request.

A. *Modification Eligibility and Requests.*

1. Number of Borrowers and Eligible Borrowers;

2. Number of Borrowers contacting Wells Fargo on the borrower's initiative by delinquency status; and

18

3.      Number of modifications, foreclosure alternatives, and fixed rate conversions that are: (i) offered (ii) completed and (iii) rejected. For modification, foreclosure alternative, and fixed rate conversion requests that were rejected, provide the number of Eligible Borrowers rejected by Reason For Rejection.

B.     *Loan Modifications.*    For loans modified under this Assurance provide the following:

1.      Average and total dollar amounts of Accrued Interest, Escrow-related Advances, Corporate and Default-Related Advances and outstanding late charges forgiven and average percentage of unpaid principal balance this represents;

2.      Average and total dollar amounts of Deferred Interest forgiven and average percent of unpaid principal balance this represents;

3.      Number of loans that received principal forgiveness, total principal forgiveness and average principal forgiveness per loan;

4.      Number of loans that received principal forbearance, total principal forbearance and average principal forbearance per loan;

5.      Number of loans that receive term extensions and the average new total term of such loans;

6.      Number of loans that receive interest rate reductions, average initial post-modification interest rate, and average interest rate reduction of such loans;

7.      Average percentage Monthly Payment reduction;

8.      Average and total dollar value of the modification by comparing the concessions of the modification to the original terms of the Note, assuming

19

the Borrower takes advantage of all opportunities presented by the modification;

9.   Average LTV pre- and post-modification;

10.  Number of short-sales that are (i) offered (ii) completed and (iii) rejected; total and average incentive payment to Eligible Borrower pursuant to Section "VIII";

11.  Number of deeds-in-lieu of foreclosure that are (i) offered (ii) completed and (iii) rejected; total and average incentive payment to Borrowers pursuant to Section "VIII";

12.  Number of deeds-in-lieu of foreclosure and short sale requests that are (i) offered (ii) completed and (iii) rejected;

13.  Number of foreclosure sales completed; and

14.  Number of Borrowers who receive a Fixed Rate Conversion pursuant to Section "VI."; number of Borrowers who applied but were rejected for such conversions; delinquency rates of converted loans.

C.   ***Portfolio and Modification Performance***

1.   Delinquency rates of unmodified Eligible Mortgages, by number and percentage, that are current, 30-59 days delinquent, 60 or more days delinquent, and in the foreclosure process;

2.   Delinquency rates (current, 30-59 days delinquent, 60 or more days delinquent, and in the foreclosure process) for Eligible Mortgages modified under MAP2R by the following post modification LTV categories: Less than 80%, 80% to 100%, 101% to 125%, 126% to 150%, and more than 150%.

Break out this data for loans that received principal forgiveness and those that did not;

3.  Number of Eligible Mortgages that have not been modified and the percentage of the Pick-a-Payment mortgage loan portfolio they represent as determined by a total Pick-a-Payment portfolio on the last day of the month in which this Assurance is signed;

4.  Number and percentage of Borrowers electing the minimum payment option based upon the last payment received from the Borrower during the quarter for which the report is being prepared;

5.  Number and percentage of Borrowers accruing Deferred Interest based upon the last payment received from the Borrower during the quarter for which the report is being prepared;

6.  Number of Eligible Mortgages expected to Recast within the next four contractual Monthly Payments;

7.  Number of Eligible Borrowers (and unpaid principal balance) with unmodified loan and a current LTV of 100% or more; and

8.  Number of 60 or more days delinquent Eligible Borrowers (and unpaid principal balance) with unmodified loans and a current LTV of 150% or more.

D.  *Servicing Performance*

1.  Average time from when Eligible Borrower submits all documentation required in the documentation requirements of Section "V.B.4" until a modification decision is mailed; and

21

2.    Number of Eligible Borrowers who have submitted all documentation required in the documentation requirements of Section "V.B.4" for whom the time to notification was more than 30 days and more than 60 days.

E.    *Additional Reporting.*  Beginning July 1, 2013 Wells Fargo will provide the Office of the Attorney General with quarterly reports through December 31, 2017 that include the information set forth below.  Such reports will be provided within forty-five (45) days after the end of each quarter.

1.    Delinquency rates of unmodified Eligible Mortgages by number and percentage that are 60 or more days delinquent;

2.    Delinquency rates (current, 30-59 days delinquent, 60 or more days delinquent, and in the foreclosure process) for Eligible Mortgages modified under MAP2R during the term of this Assurance;

3.    For any Eligible Mortgage Wells Fargo chooses to modify at its own discretion under its then existing Modification Program from January 1, 2013 through December 31, 2017, Wells Fargo will report the following information related to such modifications:

a.    The number of modifications of Eligible Mortgages that are: (i) offered (ii) completed and (iii) rejected;

b.    Number of Eligible Mortgages that received principal forgiveness, total principal forgiveness and average principal forgiveness per loan; and

c.    The average percentage of monthly payment reduction per Eligible Mortgage.

22

4.     The amount of forbearance that has been converted to permanent forgiveness under Section "V.B.2" on Eligible Mortgages modified under MAP2R prior to June 20, 2013.

## XI.   RELEASES; MORE FAVORABLE SETTLEMENT

A.    *Release.*  The Office of the Attorney General hereby fully releases and discharges Wells Fargo, its parents, affiliates, subsidiaries, employees, officers and directors from any and all civil and administrative actions, claims and causes of action based upon or with respect to the origination, marketing, servicing, prior modification or resolution practices of Eligible Mortgages prior to the date of this Assurance which the Office of the Attorney General could have brought against Wells Fargo prior to the Effective Date, except for (i) any regulatory or enforcement proceedings by or on behalf of an Agency other than a State Attorney General; (ii) any claims that the State of California might have as an investor in securities; and (iii) any criminal investigations or proceedings. This release does not apply to any matters currently in litigation with the Office of the Attorney General unrelated to the subject matter of this Assurance.

B.    *More Favorable Terms.*  In the event that Wells Fargo voluntarily enters into an agreement to assist troubled Eligible Borrowers with the Attorney General of any state that is not a signatory to this same Assurance in a form or on terms that are different than those contained in this Assurance, then Wells Fargo will provide a copy of such agreement to the Office of the Attorney General for review. If, after review, the Office of the Attorney General determines those alternative terms or form of agreement are, taken as a whole, more favorable than those contained in this Assurance, then the parties will amend this Assurance to reflect any such terms or form of agreement in place of terms hereof.

## XII.   OTHER TERMS AND CONDITIONS

A.    *No Admission*.  The Assurance shall not constitute an admission of wrongdoing by Wells Fargo or its predecessors, nor shall it be cited as such by the Office of the Attorney General. The Assurance shall not be admissible in any other proceeding.

B.    ***Submission to Jurisdiction for Limited Purpose***.  Wells Fargo submits to the jurisdiction of the court in the State of California for the limited purpose of entering into and enforcing this Assurance only.  Any acts, conduct or appearance by Wells Fargo does not constitute and shall not be construed as a submission to the general jurisdiction of any court in the State of California for any purpose whatsoever.

C.    *Voluntary Agreement*. This Assurance is entered into voluntarily and no promises, other than what is contained in this Assurance, or threats have been made by the Office of the Attorney General or any member thereof to induce Wells Fargo to enter into this Assurance.

D.    ***Jurisdiction; Choice of Law; Venue***.  The Assurance shall be construed and enforced in accordance with the laws of the State of California.  In any action or dispute relating to this Assurance, the jurisdiction and venue shall be in the Superior Court of the State of California. Wells Fargo submits to the jurisdiction of the Superior Court of the State of California for the limited purposes stated in this paragraph, which should not be construed as a submission to the general jurisdiction of that Court.

E.    ***Confidentiality.***  The Office of the Attorney General agrees that all confidential information disclosed to it by Wells Fargo, its parent, subsidiaries or any of its affiliates, including but not limited to the periodic reports that will be provided pursuant to Section X shall be considered records of an investigation conducted by the Office of the Attorney General.; provided, however, that the following information reported to the Office of the Attorney General on a periodic

24

basis shall not be deemed confidential to the extent aggregated for Eligible Borrowers in the State of California for a full reporting period:

1.    the total number of Eligible Mortgages modified;

2.    the total amount of forgiven and forborne principal; and

3.    the total amount of interest and principal expected to be saved by Eligible Borrowers as a result of such MAP2R modifications over the life of the Eligible Mortgages.

The Office of the Attorney General shall not disclose or use any confidential information without the prior written consent of the disclosing party, except to the extent required by law, regulation or court order (and in any of these circumstances, only upon prior written notice to Wells Fargo).

F.    **Enforcement.**  This Court shall retain jurisdiction over this matter for the purpose of (a) enabling the Office of the Attorney General to apply, at any time, for enforcement of any provision of this Assurance; (b) enabling any party to this Assurance to apply, upon giving thirty (30) days written notice to all other parties, for such further orders and directions as might be necessary or appropriate either for the construction or carrying out of this Assurance; and (c) enabling any party to this Assurance to request information from a party or third party, with notice to counsel for the parties and subject to the parties' and any third parties' right to object and to move to quash.

F.    *Conflict with Subsequent Law.*  In the event that any applicable law conflicts with any provision hereof, making it impossible for Wells Fargo to comply both with the law and with the provisions of this Assurance, the provisions of the law shall govern.

G.    *No Third Party Beneficiaries Intended.*  This Assurance is not intended to confer upon any person any rights or remedies, including rights as a third party beneficiary.  This

25

Assurance is not intended to create a private right of action on the part of any person or entity other than the parties hereto.

H.    *Service of Notices.*  Service of notices required or permitted by this Assurance or its enforcement shall be in writing and delivered on the following persons, or any person subsequently designated by the parties:

**For Wells Fargo:**

David L. Moskowitz
Deputy General Counsel
1 Home Campus, X2401-06T
Des Moines, Iowa 50328-0001

**For the Office of the Attorney General:**

Benjamin G. Diehl
Deputy Attorney General

Office of the Attorney General
300 S. Spring St., Ste. 1702
Los Angeles, CA  90013
Phone: (213) 897-5548
Fax: (213) 897-4951

Any party may change the designated person and address for delivery with respect to itself by giving notice to the other parties as specified herein.

I.    *Waiver.*  The failure of any party to exercise any rights under this Assurance shall not be deemed a waiver of any right.

J.    *Severability.*  If any part hereof shall for any reason be found or held invalid or unenforceable by any court of competent jurisdiction, such invalidity or unenforceability shall not affect the remainder hereof, which shall survive and be construed as if such invalid or unenforceable part had not been contained herein.

K.     *Counterparts.*  This Assurance may be signed in one or more counterparts, each of which shall be deemed an original.  Facsimile or electronic copies of this Assurance and the signatures hereto may be used with the same force and effect as an original.

L.     *Inurement.*  This Assurance is binding and inures to the benefit of the parties hereto and their respective predecessors, successors and assigns.

M.     *Integration.*  This Assurance constitutes the entire agreement of the parties with respect to the subject matter hereof and supersedes all prior agreements and understandings relating to the subject matter thereof.

N.     *Amendment.*  This Assurance may be amended solely by written agreement signed by the Office of the Attorney General and Wells Fargo.

O.     *Termination.*  The obligations of Wells Fargo under this Assurance shall terminate on the Termination Date.  Termination of the obligations under this Assurance shall not change or terminate the terms of any loan modification entered into pursuant to Section "V.B" of this Assurance.

P.     *Attorneys Fees and Costs.*  No attorney's fees and costs related to this Assurance shall be sought by the Office of the Attorney General."

*[Signature pages on the following page]*

27

DATED this ____ day of _____, 2010

WELLS FARGO BANK, N.A.

_____
Michael J. Heid
Executive Vice President


APPROVED AS TO FORM AND CONTENT:

Benjamin G. Diehl
Deputy Attorney General

For:   EDMUND G. BROWN JR.        Attorney General of California

By: _____

28