JEROME S. COHEN (SBN 143727)
SCOTT P. LAYFIELD (SBN 246481)
3731 Wilshire Blvd., Suite 514
Los Angeles, CA 90010
TEL: (213) 388-8188
FAX: (213) 388-6188
Email: jsc@jscbklaw.com

Attorneys for Debtor and Debtor-in-Possession

# UNITED STATES BANKRUPTCY COURT
## CENTRAL DISTRICT OF CALIFORNIA
## LOS ANGELES DIVISION

In re:

Barbara Jo Baiz Rodriguez,

                                    Debtor

Bk. No. 2:11-bk-39746-RK

In a Case Under Chapter
11 of the Bankruptcy Code
(11 U.S.C. § 1101 et seq.)

**DEBTOR'S THIRD AMENDED CHAPTER 11
PLAN**

<u>Disclosure Statement Hearing</u>

Date:        December 4, 2013
Time:        11:30 a.m.
Ctrm:        1675
             United States Bankruptcy Court
             255 East Temple Street
             Los Angeles, California 90012

<u>Plan Confirmation Hearing</u>

Date:        February 12, 2014
Time:        11:00 a.m.
Ctrm:        1675
             United States Bankruptcy Court
             255 East Temple Street
             Los Angeles, California 90012

Revised August 2005

# F 3018-1

## TABLE OF CONTENTS

I.    INTRODUCTION ........................................................................................................1

II.   CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS.................1
      A.    General Overview .........................................................................................1
      B.    Unclassified Claims ......................................................................................1
            1.    Administrative Expenses.....................................................................1
            2.    Priority Tax Claims ..............................................................................5
      C.    Classified Claims and Interests ....................................................................7
            1.    Classes of Secured Claims .................................................................7
            2.    Classes of Priority Unsecured Claims ..............................................13
            3.    Classes of General Unsecured Claims ..............................................13
            4.    Class(es) of Interest Holders ............................................................14
      D.    Means of Performing the Plan ....................................................................14
            1.    Funding for the Plan ..........................................................................14
            2.    Post-Confirmation Management ........................................................16
            3.    Disbursing Agent ..............................................................................16

III.  TREATMENT OF MISCELLANEOUS ITEMS ......................................................16
      A.    Executory Contracts and Unexpired Leases ...............................................17
            1.    Assumptions ......................................................................................17
            2.    Rejections .........................................................................................17
      B.    Changes in Rates Subject to Regulatory Commission Approval....................18
      C.    Retention of Jurisdiction .............................................................................18

IV.   EFFECT OF CONFIRMATION OF PLAN .............................................................18
      A.    Discharge ...................................................................................................18
      B.    Revesting of Property in the Debtor.............................................................18
      C.    Modification of Plan.....................................................................................18
      D.    Post-Confirmation Status Report ................................................................18
      E.    Quarterly Fees ............................................................................................18
      F.    Post-Confirmation Conversion/Dismissal....................................................19
      G.    Final Decree ...............................................................................................19

# I. INTRODUCTION

Barbara Jo Baiz Rodriguez is the Debtor in a Chapter 11 bankruptcy case.  On July 12, 2011, Debtor commenced a bankruptcy case by filing a voluntary Chapter 11 petition under the United States Bankruptcy Code ("Code"), 11 U.S.C. §101 et seq.  This document is the Chapter 11 Plan ("Plan") proposed by Debtor ("Plan Proponent").  Sent to you in the same envelope as this document is the Disclosure Statement which has been approved by the Court, and which is provided to help you understand the Plan.

This is a reorganizing plan.  In other words, the Debtor seeks to accomplish payments under the Plan by restructuring secured debts and making payments to creditors from the Debtor's post-confirmation income and savings.  The Effective Date of the proposed Plan will be the fifteenth (15th) day following the date of entry of the Bankruptcy Court order confirming the Plan ("Plan Confirmation Order"), provided there has been no order entered staying the effectiveness of the Plan Confirmation Order. If there has been an order entered staying the effectiveness of the Plan Confirmation Order, the Effective Date shall be the first business day after the stay is no longer in effect with respect to the Plan Confirmation Order. The Debtor, following the Effective Date, will be referred to herein as the "Reorganized Debtor".

## II. CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

### A.    General Overview

As required by the Bankruptcy Code, the Plan classifies claims and interests in various classes according to their right to priority of payments as provided in the Bankruptcy Code.  The Plan states whether each class of claims or interests is impaired or unimpaired.  The Plan provides the treatment each class will receive under the Plan.

### B.    Unclassified Claims

Certain types of claims are not placed into voting classes; instead they are unclassified.  They are not considered impaired and they do not vote on the Plan because they are automatically entitled to specific treatment provided for them in the Bankruptcy Code.  As such, the Proponent has not placed the following claims in a class.  The treatment of these claims is provided below.

#### 1.    Administrative Expenses

Administrative expenses are claims for costs or expenses of administering the Debtor's Chapter 11 case which are allowed under Code Section 507(a)(1).  The Code requires that all administrative claims be paid on the Effective Date of the Plan, unless a particular claimant agrees to a different treatment.

///

**F 3018-1**

The following lists all of the Debtor's Code Section 507(a)(1) administrative claims and their treatment under this Plan.

**Administrative Claim #1**

Jerome S. Cohen, Attorney At Law ("Cohen"), Debtor's general bankruptcy counsel

**Amount Owed to Cohen**

Estimated Outstanding Balance at Effective Date: **$00.00**

By the Plan's Effective Date, Debtor estimates she will incur total fees to Cohen of <u>$72,500.00</u> ("Cohen Fee Estimate").

Debtor has deposited with Cohen <u>$25,000.00, $20,000.00 of which Cohen held in trust until the Court authorized Cohen's compensation to this extent.</u> By November 15, 2013, or shortly thereafter, Debtor is to deposit another <u>$47,500.00</u>with Cohen ("Additional Deposit"). Debtor will make the Additional Deposit from the following sources: (a) by borrowing approximately $17,500.00 from her deferred compensation plans administered by her employer ("<u>Retirement Plan Deposit</u>"), and (b) approximately $30,000.00 from Debtor's husband, Vincent Rodriguez ("Husband Deposit")

<u>(a) Retirement Plan Deposit</u>

As of August 1, 2013, Debtor held (a) $21,930.49 in her pension plan under  subsection 401(k) of the Internal Revenue Taxation Code (commonly known as a "401K Plan"), and (b) $7,650.96 in her deferred compensation and thrift plan under subsection 457 of the Internal Revenue Taxation Code (commonly known as a "457 Plan"). These plans allow participants to borrow up to 50% of accounts with balances over $20,000.00, and up to 80% of accounts with balances less than $20,000.00.  Debtor will therefore be borrowing approximately $17,500.00.  Debtor will be borrowing these funds from these accounts so these withdrawals will not subject Debtor to taxes and penalties. However, Debtor must repay these sums to these accounts within 5 years from their withdrawal date at an interest rate of 5% fixed per annum. Payments are to be made on a monthly basis and begin immediately after withdrawal. Debtor has provided for the monthly repayment amount in the Plan Projections attached hereto. The payment is included, along with other payroll deductions, in the Plan Projections line item labeled, "Other Payroll Deductions."

///

### (b) Husband Deposit

On July 17, 2013, Cohen entered into an agreement ("Deposit Agreement") with Debtor's husband, Vincent Rodriguez ("Vince") under which Vince will make a gift to the Debtor. Vince will deposit $30,000.00 with Cohen.

Vince informed Cohen that Vince would need to access funds in pension vehicles. Cohen understands that on or about October 15, 2013, to perform his obligations under the terms of the Deposit Agreement, Vince will withdraw $30,000.00 from his Fidelity Investment – Vanguard Annuity Plan ("Account") and request that Fidelity distribute the funds to Cohen by October 17, 2013. [1]

Debtor and Vince have informed Cohen that funds in the Account are Vince's separate property and Debtor has no interest in these funds.

After making the Additional Deposit, Debtor will have deposited a total of approximately $72,500 with Cohen and therefore estimates that she will owe Cohen nothing at the Effective Date.

Cohen will deposit the Additional Deposit into Cohen's client trust account and draw it down to pay his fees incurred in this case only to the extent approved by the Court.

### Treatment of Cohen's Claim

If Cohen's actual fees exceed the Cohen Fee Estimate, then on the Plan's Effective Date, Cohen is entitled to payment in full of the allowed amount exceeding the Cohen Fee Estimate.

### Administrative Claim #2

Russ & Allcroft, Certified Public Accountants ("Russ")

### Amount Owed to Russ

Estimated Outstanding Balance at Effective Date: **$00.00**

By the Plan's Effective Date, Debtor estimates she will incur total fees to Russ of $9,500 ("Russ Fee Estimate").

Debtor deposited in Cohen's trust account $6,000.00 for the benefit of Russ, and transferred it to Russ upon Court approval. Before the Effective Date, Debtor intends to deposit another $3,500 with

---

[1] The status of the Vince Deposit Agreement is currently uncertain because Vince and the Debtor have recently separated.

**F 3018-1**

Russ from her personal earnings. She therefore estimates that she will owe Russ nothing at the Effective Date.  Russ will hold the deposits in trust pending Court approval of a duly noticed fee application.

**Treatment of Russ's Claim**

If Russ's actual fees exceed the Russ Fee Estimate, then on the Plan's Effective Date, Russ is entitled to payment in full of the allowed amount exceeding the Russ Fee Estimate.

**Administrative Claim #3**

Thomas & Elliott ("Thomas")

**Amount owed to Thomas**

Estimated Outstanding Balance at Effective Date: $00.00

By the Plan's Effective Date, Debtor estimates she will incur total fees to Thomas of $8,500 ("Thomas Fee Estimate").

Debtor holds (in Cohen's trust account) $3,250.00 to deposit with Thomas if the Court approves Thomas's employment, and before the Effective Date will deposit another $5,250 with Thomas from her personal earnings. She therefore estimates that she will owe Thomas nothing at the Effective Date.

**Treatment of Thomas's Claim**

If Thomas's actual fees exceed the Thomas Fee Estimate, then on the Plan's Effective Date, Thomas is entitled to payment in full of the amount exceeding the Thomas Fee Estimate.

If Thomas's actual fees exceed the Thomas Fee Estimate, then Thomas anticipates being able to recover these excess fees from First American Title Insurance Company pursuant to a policy of title insurance held by Debtor regarding the Tamarix Property. A full discussion of the issues surrounding this title policy can be found in Section {III. E.} of this Disclosure Statement.

**Other Claims**

Steven P. Chang ("Chang"), Esquire, former general bankruptcy counsel to Debtor. Estimated Outstanding Balance at Effective Date: $00.00.  Pre-petition, Debtor paid Chang $25,000.00 for his work on this case. Chang has submitted no post-petition fee applications. Debtor understands from her communications with Chang that Debtor's outstanding balance to Change is $00.00.

Robert Aronson ("Aronson"), Esquire, former special counsel to Debtor.  Estimated Outstanding

Balance at Effective Date: $00.00.  Post-petition, Debtor deposited a total of $9,250.00 with Aronson.  On

June 7, 2013, Debtor terminated Aronson and Aronson refunded Debtor's entire deposit to Debtor.  Mr.

Aronson has filed no claim in this case.

Clerk's Office Fees: $00.00.  Debtor  anticipates owing no Clerk's Office Fees on Effective Date

Office of U.S. Trustee Fees: $00.00 currently owed.  Debtor will pay any fee by the Effective

Date.

Court Approval of Fees Required:

The Court must approve all professional fees listed in this chart.  For all fees except Clerk's Office

fees and U.S. Trustee's fees, the professional in question must file and serve a properly noticed fee

application and the Court must rule on the application.  Only the amount of fees allowed by the Court will be

required to be paid under this Plan.

2.      Priority Tax Claims

Priority tax claims are certain unsecured income, employment and other taxes described by Code

Section 507(a)(8).  The Code requires in Section 1129(a)(9)(C) that each holder of such a 507(a)(8)

priority tax claim receive the present value of such claim in deferred cash payments, over a period ending

not later than 5 years after the date of the filing of the petition in this case.

The following lists all of the Debtor's Section 507(a)(8) priority tax claims and their treatment

under this Plan.

**Claim #1**

Claimant Name: Department of the Treasury – Internal Revenue Service ("IRS")

Type of tax: Income

Tax period: 2009

**Amount owed**

$1,741.02.

On October 13, 2011, the IRS filed a proof of claim asserting a priority unsecured claim for

$10,682.52.  Later, the IRS audited Debtor's 2009 tax return and determined that Debtor owed more than

she had paid ("IRS Audit").  On July 2, 2012, as a result of the IRS Audit, the IRS filed an amended proof

of claim asserting a priority unsecured claim for $49,671.90. Debtor appealed this calculation within the

IRS appeal process. Debtor's appeal was successful.  The IRS issued an updated audit report ("Updated

**F 3018-1**

IRS Audit"). On August 19, 2013, as a result of the Updated IRS Audit, the IRS filed a second amended proof of claim reducing its claim from $49,671.90 to only $1,741.02.

**Treatment**

Paid in full on the Effective Date.

The IRS currently holds Debtor's 2012 tax refund in the amount of $6,190.00. At the Effective Date, Debtor will direct the IRS to apply $1,741.02 of those funds directly to the IRS claim, and refund the balance to the Debtor.


**Claim #2**

Claimant Name: State of California Franchise Tax Board ("FTB")

Type of tax: income

Tax period: 2009

**Amount Owed**

$370.00 estimated.

Upon reviewing the Updated IRS Audit, Russ has determined that Debtor may owe the FTB $370.00 in income taxes for the tax year 2009. At this time, the FTB has not informed Debtor that she owes this amount, or any amount, for 2009. Debtor nonetheless wishes to treat this contingent claim in the Plan in case FTB asserts a claim within applicable limitation periods.

**Treatment**

Debtor will pay this claim in full upon final determination of the FTB claim, if any.

///

**F 3018-1**

## C.    Classified Claims and Interests

### 1.    Classes of Secured Claims

Secured claims are claims secured by liens on property of the estate.  The following chart lists all classes containing Debtor's secured pre-petition claims and their treatment under this Plan.

| CLASS # | DESCRIPTION | INSIDERS (Y/N) | IMPAIRED (Y/N) | TREATMENT |
|---|---|---|---|---|
| 1 | **Secured claim of:** Deutsche Bank National Trust Company, as Trustee for Argent Securities, Inc., Asset-Backed Pass-Through Certificates, Series 2006-M1 ("Deutsche Bank")<br><br>**Type of Lien:** Deed of Trust.<br><br>**Collateral description:** Real property located at 1907 Brockstone Dr. Perris, CA 91753<br><br>**Collateral value:** $145,000.00 (per Court order entered on March 21, 2012, and appearing on the Court's docket as Document No. 85)<br><br>**Priority:** First priority Deed of Trust.<br><br>**Total claim amount:** $460,855.84 per Proof of Claim No. 16.<br><br>**Secured claim amount:** $145,000.00 or $460,855.84 if Claimant elects to have its claim treated under 11 U.S.C. § 1111(b) ("1111(b) Election").<br>**Unsecured portion:** $315,855.84 or $00.00 if Claimant makes the 1111(b) Election. | No | Yes | **If Claimant does not make the 1111(b) Election this claim will be treated as follows:**<br><br>***Principal and Interest***<br><br>**Payment amt/interval:** $1050 monthly for 30 years (360 months).<br><br>**Begin date:** First day of the month following the Effective Date<br><br>**End date:** 30 years (360 months) from the begin date or earlier if the secured claim amount is paid in full before this time.<br><br>**Interest rate:** 7.86% fixed per annum<br><br>**Total Payout:** $378,000.00<br><br>**Treatment of Lien:** This claim is undersecured because it attaches to collateral of lesser value than the claim amount.  Pursuant to 11 U.S.C. §506(a), the claim is secured only to the extent of the value of Claimant's interest in Debtor's interest in the collateral.  Accordingly, the claim is bifurcated into a secured and an unsecured claim.  The unsecured portion of the claim will be treated as a Class 6 Nonpriority Unsecured Claim and receive a pro-rata share in the Plan's distribution to Class 6. |

F 3018-1

|  |  |  |  | **If Claimant makes the 1111(b) Election this claim will be treated as follows:** |
|---|---|---|---|---|
|  |  |  |  | ***Principal and Interest*** |
|  |  |  |  | **Stage 1:**<br>**Payment amt/interval**:<br>$1050.00 monthly for 23 years (276 months). |
|  |  |  |  | **Begin date**:<br>First day of the month following the Effective Date |
|  |  |  |  | **End date**:<br>23 years (276 months) from the begin date or earlier if the secured claim amount is paid in full before this time. |
|  |  |  |  | **Interest rate**:<br>6.9071% fixed per annum. The value of Claimant's interest in Debtor's interest in the collateral is $145,000.00. Payment of this amount over 276 months amortized at 6.9071% fixed per annum requires monthly payments of $1,050.00 which is the monthly payment provided for herein. |
|  |  |  |  | **Total Stage 1 Payout**:<br>$289,800.00 |
|  |  |  |  | **Stage 2:**<br>**Balloon payment:**<br>$171,055.84 |
|  |  |  |  | **Due Date**:<br>First day of the month following the Stage 1 end date. |
|  |  |  |  | **Total Stage 1 and Stage 2 Payout**:<br>$460,855.84 |
|  |  |  |  | **Treatment of Lien**:<br>Claimant will retain its lien. |

///

**F 3018-1**

| CLASS # | DESCRIPTION | INSIDERS (Y/N) | IMPAIRED (Y/N) | TREATMENT |
|---|---|---|---|---|
| 2 | **Secured claim of:** Nationstar Mortgage, LLC, successor in interest to Aurora Bank FSB[2]<br><br>**Type of Lien:** Deed of Trust.<br><br>**Collateral description:** Real property located at 3696 Castillo De Leon Perris, CA 92571<br><br>**Collateral value:** $165,000.00 (per Court order entered on June 1, 2012, and appearing on the Court's docket as Document No. 96)<br><br>**Priority:** First priority Deed of Trust.<br><br>**Total claim amount:** $359,553.28, per Proof of Claim No. 7<br><br>**Secured claim amount:** $200,000.00<br><br>**Unsecured claim amount:** $158,448.10 | No | Yes | The following treatment reflects a settlement agreement with creditor previously referred to herein as the "Aurora Bank Stipulation".<br><br>***Principal and Interest*** **Payment amt/interval**: $1,135.58 monthly for 30 years (360 months).<br><br>**Begin date**: June 1, 2012<br><br>**End date**: 30 years (360 months) from the begin date or earlier if the secured claim amount is paid in full before this time.<br><br>**Interest rate**: 5.5% fixed per annum<br><br>**Total Payout**: $408,802.90<br><br>**Treatment of Lien**: This claim is undersecured because it attaches to collateral of lesser value than the claim amount. Pursuant to 11 U.S.C. §506(a), the claim is secured only to the extent of the value of Claimant's interest in Debtor's interest in the collateral. Accordingly, the claim is bifurcated into a secured and an unsecured claim. The unsecured portion of the claim will be treated as a Class 6 Nonpriority Unsecured Claim under the Plan and receive a pro-rata share in the Plan's distribution to Class 6. |

[2] At the Petition Date, this claim was held by Aurora Bank FSB ("Aurora"). On September 19, 2011, Aurora provided evidence of this claim by filing a proof of claim appearing on the Court's claim register as Claim No. 7. On July 10, 2012, Nationstar Mortgage, LLC, filed with the Court the document titled, *Transfer of Claim Other Than for Security* ("Aurora Claim Transfer"), appearing on the Court's docket as Document No. 106. The Aurora Claim Transfer gives evidence that Aurora's secured claim against Debtor, reflected in Claim No. 7, was transferred to Nationstar Mortgage, LLC.

**F 3018-1**

As mentioned above, on July 3, 2012, Debtor entered into a stipulation with Aurora Bank for plan treatment of Aurora Bank's first priority secured claim against the Castillo Property.  The Aurora Bank Stipulation provides for the claim treatment prescribed above for Class 2.  The Aurora Bank Stipulation appears on the Court's docket as Document Number 100.

Faslo Solutions, LLC, successor in interest to Lehman Brothers Bank, FSB, ("Faslo") holds a second deed of trust against the Castillo Property securing a claim against Debtor in the amount of $79,419.28.  This second deed of trust attaches to no collateral value.  Faslo has not filed a proof of claim.

///

| CLASS # | DESCRIPTION | INSIDERS (Y/N) | IMPAIRED (Y/N) | TREATMENT |
|---|---|---|---|---|
| 3 | **Secured claim of:** Wells Fargo Bank, N.A., also known as Wachovia Mortgage, a Division of Wells Fargo Bank, N.A., and formerly known as Wachovia Mortgage, FSB, formerly known as World Savings Bank, FSB, its assigns and/or successors in interest ("Wells Fargo")<br><br>**Type of Lien:** Deed of Trust.<br><br>**Collateral description:** Real property located at 14773 Tamarix Dr. Hacienda Heights, CA 91745<br><br>**Collateral value:** $440,000.00 (per Court order entered on February 15, 2012, and appearing on the Court's docket as Document No. 69)<br><br>**Priority:** First priority Deed of Trust.<br><br>**Total claim amount:** $837,950.10, per Proof of Claim No. 5<br><br>**Secured claim amount:** $837,950.10. Claimant has elected to have its claim treated under 11 U.S.C. ' 1111(b).<br><br>**Unsecured portion:** $00.00 | No | Yes | ***Principal and Interest***<br><br>**Payment amt/interval:** $2,362.02 monthly for 30 years (360 months).<br><br>**Begin date:** First day of the month following the Effective Date<br><br>**End date:** 30 years (360 months) from the begin date or earlier if the secured claim is paid in full before this time.<br><br>**Interest rate:** 5.00% fixed per annum. The value of Claimant's interest in Debtor's interest in the collateral is $440,000.00. Payment of this amount over 30 years amortized at 5.00% fixed per annum requires monthly payments of $2,362.02 which is the monthly payment provided for herein.<br><br>**Total Payout:** $850,327.20<br><br>**Treatment of Lien:** Claimant will retain its lien. |

*///*

# F 3018-1

| CLASS # | DESCRIPTION | INSIDERS (Y/N) | IMPAIRED (Y/N) | TREATMENT |
|---|---|---|---|---|
| 4 | **Secured claim of:** Monteleone Interiors **Type of Lien:** Personal property lien **Collateral description:** Various home furnishings from Tamarix Property. **Collateral value:** $3,000.00(per Proof of Claim No. 1) **Priority:** First. **Total claim amount:** $16,514.41 per Proof of Claim No. 1 **Secured claim amount:** $3,000.00 **Unsecured claim amount:** $13,514.41 | No | Yes | **Payment amt/interval:** $56.61 monthly for 5 years (60 months). **Begin date:** First day of the month following the Effective Date **End date:** 5 years (60 months) from the begin date. **Interest rate:** 5.00% fixed per annum **Total Payout:** $3,396.59. |

| CLASS # | DESCRIPTION | INSIDERS (Y/N) | IMPAIRED (Y/N) | TREATMENT |
|---|---|---|---|---|
| 5 | **Secured claim of:** Oakcreek – La Mirada Homeowners Association **Type of Lien:** Judgment lien, Recorded 11/11/09 **Collateral description:** All Debtor's property. **Total claim amount:** $2,992.00 per judgment. **Secured claim amount:** $2,992.00 **Unsecured claim amount:** $00.00 | No | Yes | **Payment amt/interval:** $56.46 monthly for 5 years (60 months). **Begin date:** First day of the month following the Effective Date **End date:** 5 years (60 months) from the begin date. **Interest rate:** 5.00% fixed per annum **Total Payout:** $3,387.60. |

**2.      Classes of Priority Unsecured Claims**

Certain priority claims that are referred to in Code Sections 507(a)(3), (4), (5), (6), and (7) are required to be placed in classes. These types of claims are entitled to priority treatment as follows: the Code requires that each holder of such a claim receive cash on the Effective Date equal to the allowed amount of such claim. However, a class of unsecured priority claim holders may vote to accept deferred cash payments of a value, as of the Effective Date, equal to the allowed amount of such claims.

Debtor has no 507(a)(3), (a)(4), (a)(5), (a)(6), and (a)(7) priority unsecured claims and their treatment under this Plan.

**3.      Class of General Unsecured Claims**

General unsecured claims are unsecured claims not entitled to priority under Code Section 507(a). The following chart identifies this Plan's treatment of the class containing <u>all</u> of Debtor's general unsecured claims (see Exhibit C to the Disclosure Statement for detailed information about each general unsecured claim):

| CLASS # | DESCRIPTION | IMPAIRED (Y/N) | TREATMENT |
|---|---|---|---|
| 6 | **Nonpriority unsecured claims**<br><br>**Total amt of claims:**<br>Total amt of claims: $900,118.43, if Deutsche Bank does not elect treatment under Section 1111(b). $584,262.59 if Deutsche Bank elects treatment under Section 1111(b).<br><br><br>(Per Debtor's Schedule D*, F, E and Proofs of Claim filed)<br><br>*includes wholly unsecured junior liens and unsecured portion of senior liens | Y | **Payment amt/interval:**<br>$600.00 quarterly for 5 years (20 quarters).<br><br>**Begin date:**<br>First day of month following the Effective Date<br><br>**End date:**<br>5 years (20 quarters) from the begin date.<br><br>**Interest rate:**<br>0.00% fixed per annum.<br><br>**Total Payout:** $12,000.00<br>  The total amount of payments to this class pursuant to these terms equals $12,000.00 ("Total General Unsecured Payout"). If Deutsche Bank elects treatment under Section 1111(b), the Total General Unsecured Payout and the quarterly payment of $600.00 will not change. |

**F 3018-1**

### 4.    Class(es) of Interest Holders

Interest holders are the parties who hold ownership interest (i.e., equity interest) in the Debtor.  If the Debtor is a corporation, entities holding preferred or common stock in the Debtor are interest holders. If the Debtor is a partnership, the interest holders include both general and limited partners.  If the Debtor is an individual, the Debtor is the interest holder. The following chart identifies this Plan's treatment of the class of interest holders:

| CLASS # | DESCRIPTION | IMPAIRED (Y/N) | TREATMENT |
|---------|-------------|----------------|-----------|
| 7 | Debtor is the sole interest holder. | No | Debtor retains all her property under the Plan. |

## D.    Means of Performing the Plan

### 1.    Funding for the Plan

Debtor receives income from her employment and leasing her real property. Debtor calculates:

**Receipts**: Debtor's projected monthly gross receipts during the five - year period following confirmation ("Plan Period") will be, on average, $15,524.00; and

**Expenses**: Debtor's projected monthly expenses before Plan payments during the Plan Period will be, on average, $8,626.00.

**Net Disposable Income**: This leaves Debtor's net disposable monthly income available for Plan payments during the Plan Period to be, on average, $6,881.00.

These figures are based on:

Receipts

Debtor's actual average monthly receipts for the 6 month period ending June 30, 2013 ("Historical Period") of **$12,167.49** ("Historical Period Income") plus the following additional income ("Additional Income"):

(a) **$1,855.00**:  Starting August 1, 2013, pursuant to new tenant leases, Debtor  began collecting $3,875.00 per month in rent from the Tamarix Property. This amount reflects an increase of $1,855.00 from rents during the Historical Period.

(b) **$1,528.43**:  During February 2013 and June 2013 Debtor missed significant work because of gall stone and eye surgery, respectively.  She also missed work periodically to handle matters related to this Chapter 11 case.  She received no salary for a significant portion of this time off because she

exceeded her allotted vacation days. Missing these days reduced her average monthly income over the Historical Period to $7,216.57.  If she had stayed within her allotted vacation days, her average monthly income would have equaled $8,745.00. This is the amount projected over the Plan Period.  After Plan confirmation, Debtor will not have the distraction of managing a bankruptcy estate and is therefore confident that her allotment of vacation days will cover any time off she needs.

The Additional Income totals $3,383.43. The Additional Income plus the Historical Period Income of **$12,167.49** equals $15,550.92, approximately the same as the **$15,524.00** that Debtor projects in monthly gross receipts during the Plan Period.

<u>Expenses</u>

Debtor's actual average monthly expenses during the Historical Period were **$9,255.14** ("Historical Period Expenses") (<u>excluding</u> adequate protection payments, legal and professional expenses, and other fees related to the bankruptcy case).  Debtor expects future increases and decreases in expenses.

Increase: ("Additional Expenses"):

(a)  **$1,332.88**: During the Historical Period Debtor had deductions of $2,902.12, on average, from her paycheck each month for taxes and other benefits. During the Plan Period Debtor will have deductions of  $1,332.88 more, on average, each month for two reasons. First, Debtor projects earnings during the Plan Period averaging $1,528.43 more per month than during Historical Period.  More taxes will therefore be deducted during the Plan Period. Second, Debtor will make deductions to pay back the $30,000.00 401(k)/457 Plan loan made to pay her bankruptcy counsel Cohen.

(b) <u>**$1,074.00**</u>:  During the Historical Period Debtor did not pay real property taxes. During the Plan Period Debtor will pay real property taxes of $1,074.00 per month.

Decrease: ("Eliminated Expenses"):

(b) **$456.67:** Debtor will stop paying the California Public Employees' Retirement System[3].

(c) **$136.05:**  Debtor will stop making this life insurance payment.

(d) **$200.00**: Debtor's husband's father has agreed to reduce Debtor's rent from $1,200.00 to $1,000.00.

---

[3] Since July 1, 2010, Debtor has been making this payment every month.

**F 3018-1**

(e) **$448.00**:  During the Plan Period Debtor will no longer pay certain expenses of her husband and adult children.  Specifically, she expects these monthly reductions: $204.88 for food, $32.95 for gasoline, $47.70 for auto insurance, and $162.47 for miscellaneous items such as clothing and medical items.

(f) **$1,793.11**:  During the Historical Period, Debtor incurred nonrecurring maintenance expenses related to her Brockstone and Tamarix Property.  These expenses include: $4,700.00 for a new air conditioning and heating unit for the Brockstone Property, $600 for two lost pool keys for the Brockstone Property, several hundred dollars to fix a bathroom water leak at the Brockstone Property.  These expenses typically occur once in two or three years, not every 6 months. Debtor has accounted for these types of expenses over the Plan Period.  The expenses also include: $3,063.68 for a tarp to cover the damaged barn on the Tamarix Property, and $1,913.95 for annual brush cleanup around the Tamarix Property. As discussed below, the damaged barn is currently being repaired.

The Historical Period average monthly expenses equal $9,255.14.  The Additional Expenses equals $2,406.88 per month. The Eliminated Expenses equal $3,033.83 per month.  The Historical Period Expenses plus the Additional Expense minus the Eliminated Expenses equals $8,628.19, approximately the same as the $8,643.00 that Debtor projects in monthly expenses before Plan payments during the Plan Period.

### 2.    Post-Confirmation Management

The Debtor alone will provide post-confirmation management.  Debtor does not seek compensation in performing this work

### 3.    Disbursing Agent

The Debtor will act as the disbursing agent for the purpose of making all distributions provided for under the Plan.  The Disbursing Agent shall serve without bond and without compensation.

**F 3018-1**

### III.    TREATMENT OF MISCELLANEOUS ITEMS

**A.    Executory Contracts and Unexpired Leases**

**1.    Assumptions**

Debtor has no executory contracts to be assumed as obligations of the reorganized Debtor under this Plan.   Debtor has no executory contracts to reject under this Plan. Debtor has the following unexpired leases to be assumed as obligations of the reorganized Debtor under this Plan:

| Address | Description | Occupancy | Lease Terms |
|---|---|---|---|
| 14773 Tamarix Dr., Hacienda Heights, CA 91745 ("**Tamarix Property**") | Single family residence and guest house. | Full | Tenant:  Scott and Smoky Zeidel<br><br>Term: Expires 6/30/2014<br><br>Rent: $1,375.00 per month<br>----------<br>Tenant:  Fred Canales<br><br>Term: Expires 7/16/2015<br><br>Rent: $1,400.00 per month. |
| 3696 Castillo De Leon, Perris, CA 92571 ("**Castillo Property**") | Single Family Residence | Full | Tenant:  Pier Park<br><br>Term: Expires 3/31/14<br><br>Rent: $1,404.00 per month. |

On the Effective Date, each of the unexpired leases listed above shall be assumed as obligations of the reorganized Debtor.  The Order of the Court confirming the Plan shall constitute an Order approving the assumption of each lease listed above.  If you are a party to a lease to be assumed and you object to the assumption of your lease, you must file and serve your objection to the Plan within the deadline for objecting to the confirmation of the Plan. See Section {I.B.3.} above for the specific date.

2.    **Rejections**

On the Effective Date, no executory contracts and unexpired leases will be rejected. Thus the following instruction is inapplicable here:

The order confirming the Plan shall constitute an order approving the rejection of the lease or contract.  If you are a party to a contract or lease to be rejected and you object to the rejection of your contract or lease, you must file and serve your objection to the Plan within the deadline for objecting to the confirmation of the Plan.  See Disclosure Statement for the specific date.

THE BAR DATE FOR FILING A PROOF OF CLAIM BASED ON A CLAIM ARISING FROM THE REJECTION OF A LEASE OR CONTRACT IS 30 DAYS AFTER THE EFFECTIVE DATE.  Any claim based on the rejection of an executory contract or unexpired lease will be barred if the proof of claim is not timely filed, unless the Court later orders otherwise.

**B.    Changes in Rates Subject to Regulatory Commission Approval**

This Debtor is not subject to governmental regulatory commission approval of its rates.

**C.    Retention of Jurisdiction**

The Court will retain jurisdiction to the extent provided by law.

### IV.  EFFECT OF CONFIRMATION OF PLAN

**A.    Discharge**

This Plan provides that Debtor shall be discharged of liability for payment of debts incurred before confirmation of the Plan, to the extent specified in 11 U.S.C.§ 1141.  However, the discharge will not discharge any liability imposed by the Plan.

**B.    Revesting of Property in the Debtor**

Except as provided in Section {IV.E.}, and except as provided elsewhere in the Plan, the confirmation of the Plan revests all of the property of the estate in the Debtor.

**C.    Modification of Plan**

The Proponent of the Plan may modify the Plan at any time before confirmation.  However, the Court may require a new disclosure statement and/or revoting on the Plan if proponent modifies the plan before confirmation.

The Proponent of the Plan may also seek to modify the Plan at any time after confirmation so long as (1) the Plan has not been substantially consummated <u>and</u> (2) if the Court authorizes the proposed modifications after notice and a hearing.

**D.    Post-Confirmation Status Report**

Within 120 days of the entry of the order confirming the Plan, Plan Proponent shall file a status report with the Court explaining what progress has been made toward consummation of the confirmed Plan. The status report shall be served on the United States Trustee, the twenty largest unsecured creditors, and those parties who have requested special notice. Further status reports shall be filed every 120 days and served on the same entities.

**E.    Quarterly Fees**

Quarterly fees accruing under 28 U.S.C. § 1930(a)(6) to date of confirmation shall be paid to the United States Trustee on or before the effective date of the plan. Quarterly fees accruing under 28 U.S.C. § 1930(a)(6) after confirmation shall be paid to the United States Trustee in accordance with 28 U.S.C. § 1930(a)(6) until entry of a final decree, or entry of an order of dismissal or conversion to chapter 7.

**F.    Post-Confirmation Conversion/Dismissal**

A creditor or party in interest may bring a motion to convert or dismiss the case under § 1112(b), after the Plan is confirmed, if there is a default in performing the Plan. If the Court orders the case converted to Chapter 7 after the Plan is confirmed, then all property that had been property of the Chapter 11 estate, and that has not been disbursed pursuant to the Plan, will revest in the Chapter 7 estate, and the automatic stay will be reimposed upon the revested property only to the extent that relief from stay was not previously granted by the Court during this case.

**G.    Final Decree**

Once the estate has been fully administered as referred to in Bankruptcy Rule 3022, the Plan Proponent, or other party as the Court shall designate in the Plan Confirmation Order, shall file a motion with the Court to obtain a final decree to close the case.

DATE: December 11, 2013

_____
Barbara J. Baiz Rodriguez
Debtor and Debtor in Possession
Plan Proponent


/s/ Jerome S. Cohen
Jerome S. Cohen, Attorney At Law
Attorney for Plan Proponent

**F 3018-1**

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:
Jerome S. Cohen, Attorney At Law, 3731 Wilshire Blvd., Suite 514, Los Angeles, CA 90010

A true and correct copy of the foregoing document entitled (*specify*): **DEBTOR'S THIRD AMENDED CHAPTER 11 PLAN**
will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in
the manner indicated below::

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General
Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On
December 12, 2013, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that
the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated
below:

- Attorney for Debtor: Jerome S Cohen
  jsc@jscbklaw.com
- United States Trustee:
- Alvin Mar    alvin.mar@usdoj.gov
- United States Trustee (LA)
  ustpregion16.la.ecf@usdoj.gov
- Attorney for secured creditor Wells Fargo Bank:
  Marisol A Nagata    cdcaecf@bdfgroup.com
- Matthew J Pero    mpero@afrct.com, bcruz@afrct.com
- Attorneys for secured and unsecured creditor Aurora
  Bank:
- Todd S Garan    ch11ecf@piteduncan.com
- Casper J Rankin    ecfcacb@piteduncan.com
- Attorneys for secured and unsecured creditor Deutsche
  Bank:
- Laleh Ensafi    lensafi@yahoo.com,
  Cmartin@pralc.com

- Joseph Garibyan    cmartin@pralc.com
- Bonni S Mantovani    cmartin@pralc.com
- Jeannette Marsala    jmarsala@pralc.com,
  cmartin@pralc.com
- Lee S Raphael    cmartin@pralc.com
- Cassandra J Richey    cmartin@pralc.com
- Melissa A Vermillion    cmartin@pralc.com
- Other Parties:
- Ramesh Singh    claims@recoverycorp.com
- Mehrdaud Jafarnia    bknotice@mccarthyholthus.com,
  mjafarnia@mccarthyholthus.com
- Darlene C Vigil    cdcaecf@bdfgroup.com
- William A Bramley    william.bramley@bramleylaw.com
- James A Judge    james@thejudgefirm.com,
  anja@thejudgefirm.com

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) December 12, 2013, I served the following persons and/or entities at the last known addresses in this
bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United
States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that
mailing to the judge will be completed no later than 24 hours after the document is filed.

**Judge's Copy**
Honorable Robert N. Kwan
United States Bankruptcy Court
255 E. Temple Street, Room 1682
Los Angeles, CA 90012

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method
for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served
the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to
such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration
that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is
filed.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 12/12/13 | Scott Layfield | /s/ Scott Layfield |
|---|---|---|
| Date | Printed Name | Signature |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                 **F 9013-3.1.PROOF.SERVICE**